# In the United States Court of Federal Claims

No. 11-341 C
(Filed: February 14, 2012)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ZACHARY C. WARNER,

                          *Plaintiff*,

v.

THE UNITED STATES,

                          *Defendant.*

Military Pay; Disability
Retirement; Waiver;
Estoppel;

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Jason E. Perry*, Cheshire, CT, for plaintiff.

*Daniel G. Kim*, United States Department of Justice, Civil Division, Washington, D.C., with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Steven J. Gillingham*, Assistant Director for defendant. *Todi S. Carnes*, United States Department of the Air Force, of counsel.

## OPINION

BRUGGINK, *Judge*.

This is an action for disability retirement pay. Plaintiff, Zachary C. Warner, was separated from the United States Air Force after a physical evaluation board ("PEB") determined he was unfit for duty and recommended his discharge without disability benefits. Pending are the parties' cross-motions for judgment on the administrative record under Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"). Oral argument is deemed not necessary. For the reasons set forth below, we grant defendant's motion.

## BACKGROUND

After enlisting in the Air Force, Mr. Warner started basic military training ("BMT") at Lackland Air Force Base, Texas, on May 11, 2010.

During his first week of BMT, Mr. Warner passed his physical evaluation tests. Compl. ¶ 6. In the second week of BMT, however, Mr. Warner experienced "severe shortness of breath during a physical fitness evaluation" and showed signs of "wheezing and tightness in his chest." Compl. ¶ 7. Mr. Warner discontinued BMT during his fourth week when the Air Force transferred him to another squadron for rehabilitative training. *Id.* Dr. Charlene Williams examined Mr. Warner at the base medical clinic on June 2, 2010. Administrative Record ("AR") 18. During the examination, Mr. Warner told Dr. Williams that he had severe asthma until the age of 11. *Id*. Dr. Williams referred Mr. Warner to an allergy clinic. *Id.*

Mr. Warner visited the allergy clinic on June 9, 2010, and met with Dr. Christopher Webber, an allergy specialist. AR 18-27. Dr. Webber's medical report states that Mr. Warner reported becoming "dizzy/lightheaded after running 25 min[utes]." AR 19. Mr. Warner reported to Dr. Webber that "he was told by tech that his chest was tight and he was wheezing" immediately after he became dizzy and lightheaded. *Id.* Based on Dr. Webber's report, Mr. Warner stated to Dr. Webber that he experienced "significant chest tightness and shortness of breath and needed" medication to treat the symptoms during and after exercise. *Id.* Mr. Warner stated to Dr. Webber that he was able to perform self-paced exercise, but now was on dorm rest. *Id.*

Dr. Webber's report notes humidity as a trigger for Mr. Warner's attacks and that Mr. Warner reported mild symptoms when running or marching outdoors. *Id.* It goes on to state that Mr. Warner had not experienced symptoms while marching indoors, but he had not tried running indoors. *Id.* The report also shows that exercise-induced symptoms occurred when walking. AR 20. Dr. Webber also reports that Mr. Warner had a childhood history of asthma and that Mr. Warner experienced chest symptoms prior to BMT during track and field. *Id.* Mr. Warner attributed the latter symptoms to "deconditioning." *Id.*

In diagnosing Mr. Warner with asthma, Dr. Webber noted that "[b]ecause classification of severity is based on course of symptoms over time, [he was] unable to classify patient's asthma severity." AR 21. Dr. Webber's notes quote Air Force Instruction ("AFI") 48-123, A3.13.4 (2006)[1], which

---

[1]Dr. Webber cited AFI 48-123 (June 5, 2006) which was superceded by AFI 48-123 (Sep. 24, 2009). Both regulations treat asthma and reactive airway

states "reactive airway disease, . . . reliably diagnosed and symptomatic after the 13th birthday is disqualifying." *Id.* Dr. Webber concluded that "[a]lthough chronicity definitions may vary, this AFI defines chronicity as asthma symptoms that 'persist or recur over a prolonged period of time generally more than 12 months.' This patient meets this definition of chronicity." *Id.*

After Mr. Warner received a disqualifying diagnosis from Dr. Webber, Dr. Maria De Arman examined Mr. Warner on June 14, 2010, in preparation for Medical Evaluation Board (MEB) proceedings. AR 37-40. Dr. De Arman reported that Mr. Warner "recants [his] history of childhood Asthma." AR 39. Mr. Warner reported that he was "misremembering" when he told Drs. Williams and Webber he had asthma as a child and that instead it was his younger brother who had asthma. *Id.* Dr. De Arman confirmed Mr. Warner's diagnosis of asthma and agreed that it was a disqualifying diagnosis. *Id.* at 40. Dr. De Arman's report states that Mr. Warner has an "[u]nclear history of Asthma," that there was no documentation of asthma on his military entrance physical examination, and that she had not reviewed his civilian medical records. *Id.* Based on her evaluation of Mr. Warner, Dr. De Arman concluded that he "is not fit for military duty at this time" and recommended his discharge. *Id.*

Mr. Warner's asthma diagnosis was found to be an "existing prior to service" ("EPTS") condition by a three-physician MEB on June 22, 2010. AR 13. The MEB also determined that the condition had not been "permanently aggravated" by Mr. Warner's military service. *Id.* The MEB recommended that Mr. Warner be referred to an Informal Physician Evaluation Board ("IPEB"). *Id.*

On June 23, 2010, Mr. Warner was presented with and signed a copy of the MEB report which stated that he was "informed of the findings and recommendations" of the MEB. *Id.* Mr. Warner also signed a form entitled "Impartial Review Request," which included the following:

> I have reviewed the contents of the MEB and narrative summary. The PEBLO [Physical Evaluation Board Liaison Officer] has counseled me regarding the impartial review

---

disease as a disqualifying condition. In addition, both documents cite to Department of Defense Instructions which track the quoted language.

> process. I understand that the impartial review is designed to provide me with an impartial review of my medical board findings and recommendation. The review will ensure that the MEB adequately reflects the complete spectrum of my injuries and/or illnesses. I understand I have three duty days in which to decide. I understand this request form will become a part of the MEB package.

AR 14. The form asked Mr. Warner to indicate whether he wished to seek an impartial review of the MEB. *Id.* Mr. Warner selected the option stating "I do not request an impartial review of my MEB." *Id.* If Mr. Warner had selected an impartial review, it would have been performed by a physician not associated with the MEB, and he could have submitted a rebuttal letter that would become part of the MEB package. *Id.* After Mr. Warner's waiver of review, the MEB referred Mr. Warner's case to the IPEB. AR 13.

On July 9, 2010, the IPEB agreed with the MEB's findings and reported that Mr. Warner "has a medical condition which existed prior to service (EPTS), has not been permanently aggravated through military service, and is incompatible with the rigors of military service." AR 7. In doing so, the IPEB found Mr. Warner "unfit because of a physical disability." *Id.* The IPEB noted that Mr. Warner had a childhood history of asthma and that the MEB found that Mr. Warner's asthma was EPTS and "the condition appears to have followed the natural course of the disease." *Id.* The IPEB recommended that Mr. Warner be discharged without disability benefits. *Id.*

Mr. Warner reviewed the resulting AF Form 1180, Action on Informal Physical Evaluation Board Findings and Recommended Disposition, with a Physical Evaluation Board Liaison Officer ("PEBLO") on July 14, 2010. AR 5. The PEBLO, who is not an attorney, signed the AF Form 1180 beneath a statement reading "I have fully explained to [Mr. Warner] . . . the legal results of the findings and recommended disposition of the PEB and of the applicable case processing procedures and appeal rights." *Id.* Immediately below the PEBLO signature appears the phrase "having been advised of the results of the findings and recommended disposition of the PEB . . . and the applicable case processing procedures and appeal rights . . . ." *Id.* This phrase is followed by three options. The third option is for pilots only and thus inapplicable to Mr. Warner. The second option allows a service member to disagree with the IPEB and request a formal hearing. Mr. Warner chose and initialed the first option which states "I agree with the findings and recommended disposition

of the informal PEB and am waiving the right to a formal PEB hearing." *Id.* Mr. Warner's signature and the date appear below the option he initialed. Under Mr. Warner's signature in the "Remarks" section is the statement "Recommended Disposition: Discharge Under Other Than Chapter 61, Title 10 U.S.C. (EPTS) Compensable Percentage: N/A." *Id.* Based on the IPEB's recommendation, Mr. Warner was honorably discharged without disability benefits on July 22, 2010. AR 2.

Defendant makes three arguments: that plaintiff waived his right to seek review of the conclusions of the IPEB in this court; that even if plaintiff had not waived his right to seek review, the IPEB's findings were supported by substantial evidence, and not arbitrary, capricious, or contrary to law; and lastly, defendant argues that plaintiff should be equitably estopped from pursuing his claim because he failed to disclose his prior history of asthma before enlisting.

Plaintiff responds that defendant should not be able to rely on plaintiff's waiver of review of the IPEB findings because the waiver was not voluntary and knowing. He also contends that the IPEB's determination that plaintiff's asthma was a pre-existing condition and thus did not entitle him to disability retirement compensation and benefits was without evidentiary support and arbitrary, capricious or contrary to law. Plaintiff further claims that enforcement of the waiver would result in a violation of his due process rights under the Fifth Amendment to the U.S. Constitution.

DISCUSSION

**I. Jurisdiction**

The Tucker Act gives this court jurisdiction to hear claims for money damages founded upon acts of Congress. 28 U.S.C. § 1491 (2006). Here, plaintiff relies on 10 U.S.C. § 1201(a) (2006), which authorizes disability retirement pay for personnel who incur physical disabilities during active service to invoke jurisdiction. The Federal Circuit has held this code section to be money-mandating, and thus we have jurisdiction. *See Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005).

Although waiver of the claim is asserted in defendant's motion for judgment on the administrative record, we note that "waiver does not give rise to a jurisdictional defect, as plaintiff is challenging the determinations of the

[I]PEB." *Gant v. United States* (*Gant I*), 63 Fed. Cl. 311, 317 (2004), *aff'd*, 417 F.3d 1328 (Fed. Cir. 2005). "[E]ven if acceptance of a [I]PEB decision may act as a bar to a later claim . . . 'the bar is not jurisdictional in nature.'" *Van Cleave v. United States*, 402 F.3d 1341, 1344 (Fed. Cir. 2005) (quoting *Maier v. Orr*, 754 F.2d 973, 984 (Fed. Cir. 1985)).

## II. Standard for Judgment on the Administrative Record

Under RCFC 52.1, which permits judgment on the administrative record, the court must decide "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *CHE Consulting, Inc. v. United States*, 78 Fed. Cl. 380, 387 (2007) (quoting *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006)). This is akin to an expedited trial on the paper record. *See id.* at 387. The court does not, however, serve as a "super correction board." *Van Cleave v. United States*, 70 Fed. Cl. 674, 678 (citing *Skinner v. United States*, 594 F.2d 824, 829 (Ct. Cl. 1979)). Instead, "review of the administrative decision is limited to determining whether the [IPEB's] action was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983). The "responsibility for determining who is fit or unfit to serve in the armed service is not a judicial province," so the court will not substitute its judgment for that of the IPEB. *Id.* (citing *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953)). Plaintiff "must show by 'cogent and clearly convincing evidence' that 'the action of the military is arbitrary, capricious, unsupported by substantial evidence or contrary to applicable statutes or regulations.'" *Stine v. United States*, 92 Fed. Cl. 776, 791 (2010) (quoting *Kirwin v. United States*, 23 Cl. Ct. 497, 503 (1991)). Additionally, plaintiff "must also overcome the presumption of regularity which attaches to the actions of " a military review board. *Boyer v. United States*, 81 Fed. Cl. 188, 191 (2008).

## III. Plaintiff's Waiver was Effective to Preclude Judicial Review

Defendant argues that plaintiff voluntarily waived any further review of the IPEB's disability determination. The administrative record contains conclusive proof that plaintiff did in fact waive review of a formal PEB hearing by signing AF Form 1180. The form stated: "I agree with the findings and recommended disposition of the informal PEB and am waiving the right to a formal PEB hearing." AR 5. The waiver of a formal hearing prevents the defendant from entertaining any claims or objections and developing a full

record.  *Gant I*, 63 Fed. Cl. at 318.  "[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts."  *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952).

Defendant correctly points out that the waiver of a formal PEB review also acts as a waiver of judicial review of the IPEB.  *Gant v. United States* (*Gant II*), 417 F.3d 1328, 1330-31 (Fed. Cir. 2005)*, Meidl v. United States*, 100 Fed. Cl. 1, 7 (2011) (accord), *Williams v. United States*, 100 Fed. Cl. 263, 274 (2011) (accord), *Stine*, 92 Fed. Cl. at 792 (accord).  In order for plaintiff to avoid the effects of the waiver, he must show that the waiver was not voluntary and knowing.  *Gant II*, 417 F.3d at 1331.

Plaintiff asserts that defendant should be equitably estopped from arguing that Mr. Warner waived his right to judicial review because the waiver was involuntary or unknowing.  In support, plaintiff states it is "inexplicable that Mr. Warner would knowingly and voluntarily waive his rights to a formal board."  Pl.'s Cross-Mot. & Resp. 16-17, ECF No. 8.  Plaintiff also makes the remarkable speculation that the PEBLO must have "failed to properly counsel [Mr. Warner] on the standards and methodologies used in making EPTS determinations."  *Id.* at 15.  Plaintiff asserts that "it would be legal malpractice[2] to not counsel someone to challenge the findings."  *Id.* Continuing with his circular reasoning, plaintiff asserts that the fact he "did not challenge the MEB or the PEB shows that the advice given by the PEBLO was deficient."  *Id.* at 16.  In support of this assertion, plaintiff states that "he had nothing to lose by challenging the findings" and "he sought the advice of an attorney" shortly after discharge.  *Id.*

Plaintiff's argument amounts to the following syllogism: major premise–only misrepresentation could prompt someone to sign a waiver of procedural rights; minor premise–plaintiff signed the waiver; conclusion–the waiver must have been unknowing and involuntary.  We are willing to accept the minor premise, but there is nothing in logic to support the major premise.  Indeed, if we were to accept this argument, a person could never waive procedural rights.  *See Gant II*, 417 F.3d at 1331 (finding conclusory allegations insufficient to show plaintiff's waiver was not voluntary or without

---

[2]The PEBLO was not an attorney.

knowledge) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The test for equitable estoppel is set out correctly by plaintiff as follows:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

Pl.'s Cross-Mot. & Resp. 15-16 (citing *Colon v. United States*, 71 Fed. Cl. 473, 484 n.14 (2006)). Plaintiff argues that the PEBLO's explanation of the findings of the MEB and IPEB was deficient, that the Air Force intended plaintiff to act on the PEBLO's deficient advice, and that plaintiff acted on this conduct to his injury. Plaintiff's estoppel argument, however, centers on the same unsupported allegation that the PEBLO failed to counsel him properly.

It is defendant that is the aggrieved party here. The Air Force is entitled to assume that plaintiff told the truth when he enlisted without reporting any history of asthma. As defendant asserts, "[a] party's conduct and admissions operate against him in the nature of an estoppel when the other party detrimentally relies upon that conduct or those admissions." Def.'s Mot. 23 (citing *Colon*, 71 Fed. Cl. at 483). Plaintiff's conduct and omissions with regard to his on-again off-again history of asthma certainly lend support to defendant's independent argument that he should be estopped from pursuing this claim. On his medical evaluation for entry into the Air Force, which plaintiff certified as "true and complete," he reported no history of asthma or shortness of breath. AR 32-34. Then, within approximately a month of entry into the Air Force, plaintiff freely relayed a childhood history of asthma to two doctors. Those doctors considered the asthma symptoms chronic, one defining the symptoms as "persist[ing] or recur[ring] over a prolonged period of time generally more than 12 months." AR 21. Although plaintiff recanted this history to a third doctor, he agreed with the MEB and the IPEB that his condition was pre-existing and not permanently aggravated by military service. It is not necessary for the court to rely on defendant's equitable estoppel argument, however, because the waiver bars plaintiff from once again backpedaling on his representations.

In any event, plaintiff offers no evidence of any affirmative misconduct

by the Air Force. "[I]n addition to the traditional elements [of equitable estoppel] a litigant asserting estoppel against the government must establish some type of affirmative misconduct by the government." *See Peters v. United States*, 28 Fed. Cl. 162, 169 (1993) (citing *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 421 (1990). Further, there is a "strong, but rebutable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Porter v. United States*, 163 F.3d 1304, 1316 (Fed. Cir. 1998) (citations omitted). Air Force guidance states that a PEBLO "will not speculate about the possible case disposition or percentage of disability in counseling evaluees." AFI 36-3212, ¶ A2.1 (Feb. 2, 2006). The guidance further provides that a "PEBLO advises member that he or she has the legal right to a full and fair hearing" and "that appearance before a formal PEB constitutes a full and fair hearing as envisioned by the law." *Id.* at ¶A2.10. Plaintiff has failed to provide any evidence to rebut the presumption that the PEBLO and the IPEB "discharged [their] duties correctly, lawfully, and in good faith." *Porter*, 163 F.3d at 1316.

Finally, we note that "it is a 'well-established rule that a citizen is presumed to know the law, and that ignorance of the law will not excuse.'" *Meidl*, 100 Fed. Cl. at 7 (quoting *Page v. United States*, 51 Fed. Cl. 328, 339 n.13 (2001). Plaintiff has offered no evidence that the PEBLO advised plaintiff against his interest, or that plaintiff was "ignorant of the true facts." Further, plaintiff is deemed to have read what he signed. *See Upton v. Tribilcock*, 91 U.S. 45, 50 (1875) ("It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained.").

We find that Mr. Warner voluntarily and knowingly waived his right to review of the IPEB's findings by a formal PEB and, therefore, waived his right to judicial review of the IPEB's findings. As we discuss below, however, even if we review the merits, the IPEB's findings were supported by evidence and not arbitrary, capricious or contrary to law.

## IV. The IPEB's Findings were not Arbitrary, Capricious, Unsupported by Substantial Evidence or Contrary to Law

Although we find that plaintiff waived his right to judicial review of the IPEB's decision, we will address, in the alternative, plaintiff's argument that the IPEB's decision was not supported by evidence or arbitrary, capricious or contrary to law. Plaintiff's argument relies on the regulatory presumption of

sound condition for members on duty for more than thirty days.  *See* Dep't of Def. Policy Memo. on Implementing Disability-Related Provisions of the Nat. Def. Authorization Act of 2008, 6 (Oct. 14, 2008) (amending DoDI 1332.38), (hereinafter "DoD Memo II").[3]  Plaintiff entered active duty for BMT on May 10, 2010, and was discharged on July 22, 2010, thus plaintiff argues the presumption applies.  This presumption is overcome, however, "if clear and unmistakable evidence demonstrates that the disability existed before the Service member's entrance on active duty and was not aggravated by military service."  DoD Memo II, 6.  Plaintiff asserts that the IPEB made no finding of clear and unmistakable evidence in deciding that his asthma was EPTS and not permanently aggravated by military service, thus the IPEB's decision was arbitrary, capricious, unsupported by evidence or contrary to law.

Defendant contends that the presumption of sound condition is

_____

[3]The presumption of sound condition as found in DoD Memo II states in part that:

> E3.P4.5.2. Presumption for Members on Active Duty for More than 30 days. The presumptions listed in E3.P4.5.2.1., through E3.P4.5.2.3., below apply to members on orders to active duty of more than 30 days, for purposes of determining whether an impairment was incurred or aggravated while a member was entitled to basic pay.

> E3.P4.5.2.2. After Entry

> E3.P4.5.2.2.1. Presumption of Sound Condition for members ordered on active duty for more than thirty days.  This presumption applies in all cases in which a member, on active duty for more than 30 days is found to have a disability and the disability was not noted at the time of the member's entrance on active duty.  This presumption is overcome if clear and unmistakable evidence demonstrates that the disability existed before the Service member's entrance on active duty and was not aggravated by military service.  Absent such clear and unmistakable evidence, the PEB will conclude that the disability was incurred or aggravated during military service.

DoD Memo II, 6.

overcome because a more particularized presumption applies here and trumps the general presumption of fitness.   Defendant points to a regulation establishing which conditions are presumed to be pre-existing.  Dep't of Def. Policy Memo. on Implementing Disability-Related Provisions of the Nat. Def. Authorization Act of 2008, 3 (Mar. 13, 2008) (amending DoDI 1332.38), (hereinafter "DoD Memo I").[4]  These include "symptoms of chronic disease identified so soon after the day of entry on Military Service but not exceeding six months that the disease could not have originated in that short a period will be accepted as proof that the disease manifested prior to entrance into active Military Service."  DoD Memo I, 3.  Defendant asserts that chronic asthma diagnosed virtually contemporaneously with plaintiff's entry to service is proof, under this standard, that the asthma was EPTS.

We agree.  The administrative record contains numerous facts from which the IPEB readily could infer that the condition was pre-existing and not permanently aggravated by military service.  Plaintiff's symptoms appeared during his second week of BMT.  He twice stated he had childhood asthma. Plaintiff stated he experienced chest symptoms in high school track and field. Plaintiff was seen independently by three doctors (including an allergy/asthma specialist) who concluded he had asthma.  Two of the doctors, including the specialist, documented a pre-existing condition and the third stated the history was "unclear" only after plaintiff recanted his earlier statements.

A separate three-physician MEB evaluated the findings of the other

---

[4]DoD Memo I provides a presumption that a condition is pre-existing under certain circumstances.  The presumption states:

E3.P4.5.4. Conditions Presumed to be Pre-Existing. Occurrence of disease as described in paragraphs E3.P4.5.4.1. and E3.P4.5.4.2., below, shall be presumed to have existed prior to entry into Military Service.

E3.P4.5.4.1. Signs or symptoms of chronic disease identified so soon after the day of entry on Military Service but not exceeding six months that the disease could not have originated in that short a period will be accepted as proof that the disease manifested prior to entrance into active Military Service.").

DoD Memo I, 3.

three doctors.  The MEB concluded the asthma was EPTS and not permanently aggravated by service.  As defendant points out, the IPEB was free to consider that plaintiff chose to not challenge the MEB's findings, lending support to the findings of the MEB.  As defendant contends, in evaluating the findings of the three physicians and the MEB, the IPEB was able to evaluate "[f]undamental deductions, consistent with medical facts that are so reasonable and logical as to create a virtual certainty they are correct."  *See* DoDI 1332.38, ¶E2.1.1 (defining "accepted medical principles").  The IPEB had to make a finding based on "well established medical principles," that plaintiff's asthma was EPTS and not permanently aggravated by military service.  *See* AFI 36-3212, ¶ 3.22.4.1 (requiring findings of natural progression be based on "well established medical principles").  We find that the IPEB had more than adequate evidence to find that plaintiff's asthma was a chronic disqualifying condition occurring so soon after enlistment that it could be presumed to be pre-existing.  We believe there is no separate requirement to find "clear and unmistakable" evidence to negate the presumption of fitness once the presumption of a pre-existing condition is satisfied.[5]

Although not part of the administrative record, plaintiff now submits a seventy-six page exhibit containing plaintiff's civilian medical records.  *See* Pl.'s Resp. & Reply, Ex. 1.  Plaintiff asserts that the only mention of asthma in the civilian medical records is in documentation of family history which refers to plaintiff's brother.  *Id.*  Although plaintiff chose to not present these records to the MEB or IPEB when presented with the opportunity, if accepted by this court, the records  would appear to bolster plaintiff's claim that his brother had childhood asthma, not plaintiff.

Defendant seeks to strike the exhibit on the basis that our review is limited to "the administrative record already in existence, not some new record made initially in the reviewing court." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009).  Defendant further points out that the administrative record "should be supplemented only if the existing record is insufficient to permit meaningful review."  *Id.* at 1381.

Plaintiff wishes to use these documents to assert that his asthma was not

---

[5]If such a requirement does exist, the failure to articulate such a finding would be harmless error here, where there was clear and unmistakable evidence that the disability existed before entrance on active duty.

pre-existing. Although plaintiff's civilian medical records were not before the IPEB, the administrative record reflects plaintiff's sworn statement in his military entry medical evaluation that he did not have asthma. The record also reflects plaintiff's statement to Dr. De Arman that he did not have childhood asthma. The administrative record thus already contains plaintiff's assertion that his asthma was not pre-existing.

Further, as defendant points out, the first page of plaintiff's civilian medical records reflect that plaintiff was prescribed an "[a]lbuterol inhaler 2 puffs TID [three times per day]." Def.'s Mot. to Strike, 2, ECF. No 13. The administrative record is clear that plaintiff claimed never to have used an inhaler prior to entry into the military. *See* AR 34. We therefore consider it highly unlikely that the result would have been different if plaintiff's civilian medical records had been considered below. We find that supplementation of the records is not necessary for effective judicial review and therefore grant defendant's motion to strike. The IPEB's determination is supported by substantial evidence and is not arbitrary, capricious or unsupported by law.

## V. Plaintiff's Due Process Claim is Without Merit

Plaintiff finally asserts that enforcing the waiver would constitute a violation of his Fifth Amendment due process rights. He reasons that the waiver prevents the court from considering his substantive claims, including that the IPEB erroneously applied the presumption of fitness. There are a number of flaws in this argument. The first is that due process rights are subject to waiver. *See D. H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185 (1972) ("due process rights to notice and hearing prior to a civil judgment are subject to waiver"). Moreover, we already have held, in the alternative, that the IPEB did not improperly apply the presumption of fitness. Finally, Mr. Warner does not allege that he was not offered notice and an opportunity to be heard. In fact he either received or was offered all the process to which he was entitled. We have found that he waived any further administrative review.

The cases plaintiff cites do not change the analysis. He cites *Lee v. United States*, 32 Fed. Cl. 530, 542 (1995) for the proposition that the court cannot impose a requirement on plaintiff to raise constitutional claims first in the administrative process. In *Lee,* plaintiff was administratively discharged without a hearing. *Id.* at 543. Defendant contended that plaintiff was required to bring his claim before the Air Force Board for the Correction of Military Records and, failing to do so, plaintiff could not bring the claim before this

court. *Id.* at 537, 542.  The court held  Mr. Lee could not be required to first bring constitutional claims in the administrative process.  *Id.* at 542.  Unlike in *Lee*, however, defendant in this case is not challenging the court's jurisdiction to hear plaintiff's claims nor is it arguing that Mr. Warner failed to exhaust his administrative remedies.  Instead, defendant's point here is that when provided notice of the IPEB's findings and an opportunity to be heard in a formal review of those findings, plaintiff chose to agree with the IPEB and waive review.  The waiver constitutes a decision by plaintiff not to take advantage of the process offered.  *Lee* is thus irrelevant here.

Plaintiff next cites *Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009) for the proposition that veterans disability benefits are a property interest protected by the Fifth Amendment.  *Cushman* is also not on point.  In *Cushman*, the Federal Circuit considered whether a claimant was denied due process because of the introduction and consideration of improperly altered evidence.  *Id.* at 1296-1300.  Mr. Warner has made no comparable assertion here.  As the Federal Circuit noted in *Cushman*, due process requires notice and an opportunity to be heard.  *Id.* at 1296.  The IPEB met and gave due consideration to whether Mr. Warner met the eligibility requirements to receive disability benefits and concluded that he did not.  In any event, plaintiff gave up the right to claim that he met the eligibility requirements when he signed the waiver.  *See* AR 5.

## CONCLUSION

Plaintiff waived his right to seek review of the IPEB's conclusions.  Even if the waiver was not effective, the IPEB's decision was supported by substantial evidence and was not arbitrary, capricious, or contrary to law.  Accordingly, defendant's motion for judgment on the administrative record is granted.  Defendant's motion to strike is granted.  The Clerk is directed to dismiss the complaint with prejudice.  No costs.

s/Eric G. Bruggink
ERIC G. BRUGGINK
Judge

14